UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MAHMOUD AL KHATEEB, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:25-cv-00626-JPH-MG |
| ) | |
| SAMUEL OLSON, ) | |
| TODD M. LYONS, ) | |
| KRISTI NOEM, ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| PAM BONDI, ) | |
| EXECUTIVE OFFICE FOR IMMIGRATION ) | |
| REVIEW, ) | |
| BRANDON CROWLEY, ) | |
| ) | |
| Respondents. ) | |

**ORDER GRANTING PETITION FOR HABEAS CORPUS, GRANTING AND DENYING OTHER MOTIONS, AND DIRECTING FURTHER PROCEEDINGS**

Petitioner Mahmoud Al Khateeb is a noncitizen who was arrested by U.S. Immigration and Customs Enforcement ("ICE") agents on December 1, 2025, and is detained at the Clay County Jail in Brazil, Indiana. He petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a bond hearing pursuant to 8 U.S.C. § 1226(a). For the reasons explained below, the Court grants the petition to the extent that **no later than 5:00 p.m. on December 22, 2025, Respondents must either**: (1) afford Mr. Al Khateeb an individualized bond hearing before an Immigration Judge

1

pursuant to 8 U.S.C. § 1226(a); or (2) release him from custody, under reasonable conditions of supervision.

## I. Facts

Petitioner is a citizen of Jordan who entered the United States without inspection in September 2024. Dkt. 1 at 8. He was detained temporarily, and an asylum officer determined he had a credible fear of returning to Jordan based on past persecution by the Jordanian government and the risk of renewed torture and arrest. *Id.*

On November 14, 2024, DHS issued Petitioner a Notice to Appear, ordering Petitioner to appear before an immigration judge. *See* dkt. 1-11. The notice identifies Petitioner as "an alien present in the United States who has not been admitted or paroled," not as "an arriving alien." *Id.* The notice does not identify Petitioner as an applicant for admission. *Id.* Petitioner was then released on parole, dkt. 1-1, and instructed to report to ICE in Chicago, which he did. *Id.*; dkt. 1 at 8. His removal proceeding is pending, as is an asylum application. Dkt. 1-11; dkt. 9 at 5.

On December 1, 2025, Petitioner was arrested pursuant to a warrant, dkt. 9-1, when he reported to an ICE field office to replace his ankle monitor. *Id.* at 9.

## II. Analysis

Petitioner asks the Court for habeas corpus relief based on his membership in the class granted relief in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3289861, at *11 (C.D.

2

Cal. Nov. 20, 2025) (Count I), the government's violation of the Immigration and Nationality Act ("INA") (Counts II and III), and the government's violation of his Fifth Amendment due process rights (Count IV). Dkt. 1 at 15-19. The respondents argue that Petitioner is not a member of the *Maldonado Bautista* class and that the *Maldonado Bautista* court did not issue a class-wide declaratory judgment; that the petition is premature because Petitioner has yet to appear before an immigration judge to request bond; that Petitioner is properly detained pursuant to 8 U.S.C. § 1225, which does not provide for bond; and that Petitioner's continuing detention does not violate due process. Dkt. 9.

### A.  **Exhaustion**

Petitioner has yet to appear before an immigration judge.[1] Respondents argue that, as a result, the petition is premature because Petitioner has not exhausted all available administrative remedies. Petitioner argues that any attempt to exhaust his administrative remedies would be futile because an immigration judge would deny his request for a bond hearing under the recent Bureau of Immigration Appeals ("BIA") decisions *Matter of Yajure Hurtado*, 29

---

[1] Petitioner was scheduled to appear before an immigration judge in Chicago on December 29, 2025. Dkt. 1 at 3. That appearance was cancelled after Petitioner's arrest and rescheduled for January 13, 2026, in El Paso, Texas. Dkt. 9-1. Petitioner attempted to request bond before an immigration judge in Chicago on December 9, but the judge declined to take action because Petitioner's immigration case had been transferred to El Paso even though Petitioner was being held in Clay County at the time. Dkt. 1-12.  Respondents state that Petitioner's removal and asylum proceedings are being moved to the Chicago immigration courts and that Petitioner is scheduled for a hearing in January 2026.  Dkt. 9 at 5.

3

I&N Dec. 216 (BIA 2025), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). Both *Yajure Hurtado* and *Q. Li* held that immigration judges do not have the authority to hold a bond hearing where the moving noncitizen entered the country without inspection.[2] Because Petitioner entered the country without inspection, if he were to move for a bond hearing, an Immigration Judge following these decisions would have to decline jurisdiction over the issue.

Respondents do not cite a statute requiring Petitioner to move for a bond hearing before an Immigration Judge before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Requiring Petitioner to exhaust his administrative remedies here would be futile. In similar circumstances, other district courts determined that the petitioner was not required to exhaust administrative remedies by seeking a bond hearing before an immigration judge because doing so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once]

---

[2] *Matter of Hurtado's* rationale is that noncitizens who entered without inspection are subject to the mandatory detention provision in § 1225, not the discretionary detention provision in § 1226(a).

4

the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Petitioner was not required to exhaust administrative remedies because doing so would be futile.

### B. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . .. [T]he Attorney General— (1) may continue to detain the arrested alien; and (2) may release the alien on— (A) bond . . . ; or (B) conditional parole . . . ." 8 U.S.C. § 1226(a).

An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); see also 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); see also Hernandez v. Sessions, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.* Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt

6

entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### C. Petitioner is eligible for a bond hearing pursuant to 8 U.S.C. § 1226(a)

Petitioner argues that § 1225 does not apply to his arrest and detention. The government responds that, because Petitioner has applied for asylum, "he is plainly seeking admission to the United States," and so he is subject to mandatory detention under § 1225(b)(2)(A). Dkt. 9 at 10.

Since the BIA issued *Yajure Hurtado*, federal courts have issued dozens of opinions in habeas actions by detainees claiming to be subject to § 1226 but who the government has detained under § 1225. This Court has found petitioners in similar factual circumstances to be subject to § 1226 rather than § 1225. *See, e.g., Cazarez-Gonzales v. Olson*, No. 2:25-CV-590 (S.D. Ind. Dec. 5, 2025) (citing cases).  S*ee also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, --- F. 4th ---, No. 25-3050, 2025 WL 3552514, at *8-*10 (7th Cir. Dec. 11, 2025) (stating in resolving request for a stay pending appeal that "Plaintiffs have the better argument on the current record", referring to argument that "ICE's authority to detain a noncitizen discovered within the country derives from § 1226(a) and not from § 1225(b).") In this case, the Respondents' actions

7

and their representations to Petitioner demonstrate that his detention is governed by § 1226 and that he is not subject to mandatory detention under § 1225.

If Petitioner was an "alien arriving in the United States," the government was obligated by statute to immediately order him removed from the United States or refer him to an asylum officer, at which point he would have been subject to either removal or mandatory detention pending review of his claims. 8 U.S.C. § 1225(b)(1). Alternatively, if Petitioner was "an applicant for admission" to the United States, the government was obligated to detain him pending resolution of removal proceedings. 8 U.S.C. § 1225(b)(2). But here, Petitioner was released on parole. In such cases, § 1226 is the *only* basis for release. Under § 1225, the government could only remove him or detain him pending review by an asylum officer. The fact that the government released Petitioner is strong evidence that he is subject to § 1226 rather than § 1225.

The facts of Petitioner's rearrest and current detention also show that his custody is pursuant to § 1226. An alien "cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025). The provisions "can be reconciled only if they apply to different classes of aliens." *Romero v. Hyde,* No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025). According to ICE's own documents, Petitioner was an alien arrested and detained pursuant to a warrant. Dkt. 9-1 at 7. This makes him eligible for bond under the plain language of § 1226(a). *See Campos*

8

*Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions.").

Further, "the Government has affirmatively decided to treat" Petitioner "as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that [he is] detained under Section 1225(b)." *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)); *see also Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal proceedings under section 1229a and released them on their own recognizance under section 1226(a).").

The Court concludes that section 1225(b)(2) does not apply to Petitioner, so he is not subject to mandatory detention under that statute. He therefore is entitled to a bond hearing under section 1226. The Court declines to reach Petitioner's other arguments.

### III. Scope of Relief

Petitioner is entitled to habeas relief because his continued mandatory detention pursuant to § 1225(b)(2) violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy,

9

which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Petitioner requests immediate release from custody or, in the alternative, an individualized bond hearing before an immigration judge. Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Petitioner's immediate release and instead orders Respondents to either provide him an individualized bond hearing, as required by § 1226(a), or release him from custody.

## IV. Conclusion

The Court **grants** the petition for writ of habeas corpus to the extent that **by 12:00 p.m. on December 22, 2025**, **Respondents must either**: (1) provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision. Respondents must document that they have provided Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) or that they have released him. Respondents **must file notice with the Court by 5:00 p.m. on December 23, 2025**, of either action.

Petitioner's motion for a temporary restraining order, dkt. [3], is **denied without prejudice as moot**. Petitioner's supplemental motion, dkt. [13], is

10

**granted** to the extent the Court has docketed Petitioner's proffered supplemental authority filed pursuant to the December 12 show cause order.

The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 12/19/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel of record